## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANICA ASHBOURNE,<br><br>     *Plaintiff*,<br><br>   v.<br><br>DONNA HANSBERRY, *et al.*,<br><br>     *Defendants*. | Civil Action No. 21-1313 (LLA) |

## <u>MEMORANDUM OPINION</u>

This suit arises from Plaintiff Anica Ashbourne's 2011 termination from the Internal Revenue Service ("IRS") and her 2015 departure from the U.S. Coast Guard. *See* ECF No. 1. Ms. Ashbourne is an attorney proceeding pro se. *See id.* She sues the U.S. Treasury Department ("Treasury") Secretary in her official capacity and three Treasury employees—Donna Hansberry, Donna Prestia, and Thomas Collins—in their official and individual capacities (collectively, the "Treasury Defendants"). *Id.* at 1-2. Ms. Ashbourne also sues the Secretary of Homeland Security in his official capacity, and Department of Homeland Security ("DHS") employees James Trommatter and Thomas Harker in their official and individual capacities (collectively, the "DHS Defendants"). *Id.* Defendants move to dismiss or, in the alternative, for summary judgment. ECF No. 18. For the reasons explained below, the court will grant Defendants' motion to dismiss.

### I.    Factual Background

For purposes of resolving Defendants' motion to dismiss, the court accepts Ms. Ashbourne's well-plead factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Anica Ashbourne, a Black woman, worked as a Senior Associate in Financial Reporting and Analysis at the U.S. Coast Guard from November 4, 2014 to April 22, 2015.  ECF No. 38-3 ¶ 1; ECF No. 1 at 2, 5.  On July 24, 2014, Ms. Ashbourne completed an Optional Form 306, "Declaration for Federal Employment" ("OF-306").  ECF No. 38-3 ¶ 7.  She answered "yes" to Question 12, which asked, "During the last 5 years, have you been fired from any job for any reason, did you quit after being told you would be fired, did you leave any job by mutual agreement because of specific problems, or were you debarred from Federal employment by the Office of Personnel Management or any other Federal agency?"  *Id.*  Ms. Ashbourne had been terminated from her position at the IRS in 2011.  *See* ECF No. 18-2 at 3.  On her OF-306, she explained that she was "litigating her unlawful termination by her IRS supervisors in U.S. district court."  ECF No. 38-3 ¶ 7.  Ms. Ashbourne also answered "yes" to Question 13—"Are you delinquent on any Federal debt?"—and "explained that she was working with the IRS to calculate her tax liabilities because [a] former employer failed to issue her a W-2."  *Id.* ¶ 8.

In August 2014, Noelle Beato emailed Ms. Ashbourne on behalf of the Office of Personnel Management ("OPM").  *Id.* ¶ 9.  Ms. Beato asked Ms. Ashbourne several questions, including why her employment at the Treasury Department (the IRS) ended, when her federal debts became delinquent, and the amount of those debts.  *Id.*  Ms. Ashbourne responded that she had been terminated by Treasury because she was "falsely accused" of lying about her employment history.  *Id.* ¶ 10.  She also stated that she was roughly $13,000 in arrears on her mortgage, which was secured through the Federal Housing Authority ("FHA"), that she "was working with the IRS to determine her tax liability," and that "her bank required her to be delinquent on her FHA loan for its loan mitigation program."  *Id.* ¶ 11.

In April 2015, Ms. Ashbourne "became alarmed when several armed male guards yelling into their walkie-talkies rushed onto her floor." ECF No. 1 at 5. Thomas Harker, Director of Financial Reporting and Analysis, told Ms. Ashbourne's manager to call her into a small conference room. *Id.* When Ms. Ashbourne entered the room, "she was immediately surrounded by several armed male guards who had their hands on their guns and billy clubs. Once they had her surrounded, one of the guards ([a] white male) yelled into his walkie-talkie, 'we have her and the room is secure.'" *Id.* at 5-6. Ms. Ashbourne "was traumatized into believing that she would be clubbed, tackled, or shot in the back." *Id.* at 6. "Referring to a notice of charges signed by [James] Trommatter ([a] white male)[1], [Mr.] Harker said they were removing [Ms. Ashbourne] due to 'Employment Misconduct' and 'Financial Dishonesty.'" *Id.* Mr. Harker told Ms. Ashbourne that the charges were based on her 2014 background investigation and OF-306. *Id.* Mr. Harker handed her the notice of charges "and instructed the guards to escort her in front of her co-workers, potential employers, and nearly 200 other employees out of the facility." *Id.*

Ms. Ashbourne further alleges that, in 2011, Treasury employees Donna Hansberry, Donna Prestia, and Thomas Collins "instructed OPM to enter 'issue codes' in [her] personnel records." *Id.* Ms. Ashbourne "sued them because they falsely accused her of lying on her resume and about her former employer Tom G. Johnson ([a] white male)." *Id.* "Later, when OPM asked Hansberry, Prestia, and Collins for their evidence, they refused to respond." *Id.*

## II. Procedural History

This is Ms. Ashbourne's fourth lawsuit in this court arising from her 2011 termination from the Treasury Department and/or her 2015 departure from the Coast Guard. In 2011,

---

[1] At the time, Mr. Trommatter was the Office Director of the Coast Guard's Security Center. ECF No. 38-3 ¶ 13.

Ms. Ashbourne sued the Treasury Department under the Privacy Act, challenging the Agency's determination that she provided misleading information during her background investigation and her subsequent termination. *Ashbourne v. Hansberry*, No. 12-CV-1153, 2015 WL 11303198, at *1-3 (D.D.C. Nov. 24, 2015), *aff'd*, 703 F. App'x 3 (D.C. Cir. 2017) ("*Ashbourne I*"). The court (Howell, J.) granted summary judgment to the Agency, the U.S. Court of Appeals for the D.C. Circuit affirmed, and the Supreme Court denied certiorari. *Id.* at *11; *Ashbourne v. Hansberry*, 703 F. App'x 3 (D.C. Cir. 2017); *Ashbourne v. Hansberry*, 139 S. Ct. 602 (2018).

Ms. Ashbourne sued the Treasury Department again in 2016, challenging the Agency's background check determination and decision to terminate her. *Ashbourne v. Hansberry*, 245 F. Supp. 3d 99, 101 (D.D.C. 2017), *aff'd*, 894 F.3d 298 (D.C. Cir. 2018) ("*Ashbourne II*"). This time, Ms. Ashbourne alleged that the Agency had discriminated against her on the basis of race and gender in violation of Title VII. *Id.* at 100. The court (Kollar-Kotelly, J.) concluded that the suit was barred by res judicata because it arose from the "same nucleus of facts" as *Ashbourne I*, *id.* at 104, and that Ms. Ashbourne could have brought her Title VII claims in that case, *id.* at 103-06. The D.C. Circuit affirmed, and the Supreme Court denied certiorari. *Ashbourne v. Hansberry*, 894 F.3d 298 (D.C. Cir. 2018); *Ashbourne v. Hansberry*, 140 S. Ct. 305 (2019).

In 2017, Ms. Ashbourne sued both the Treasury Department (challenging her 2011 background investigation determination and termination) and the Department of Homeland Security (challenging the 2015 notice of charges) for Privacy Act and due process violations. *Ashbourne v. Hansberry*, 302 F. Supp. 3d 338, 343 (D.D.C. 2018) ("*Ashbourne III*"). As in *Ashbourne II*, the court (Sullivan, J.), found that Ms. Ashbourne's claims against the Treasury Department were barred by res judicata, because she had already litigated those claims in *Ashbourne I*, *id.* at 344, but it allowed her claims against the DHS defendants in their official

4

capacities to proceed to discovery, *id.* at 352-53.  The court ultimately granted the DHS Defendants summary judgment, concluding that Ms. Ashbourne had not made out Privacy Act or due process claims against the Agency.  *See Ashbourne v. Hansberry*, No. 17-CV-752, 2024 WL 3443324 (D.D.C. July 17, 2024).

In May 2021, Ms. Ashbourne filed this action.  ECF No. 1.  She alleges that Defendants violated 42 U.S.C. §§ 1985-86, the Civil Rights Act of 1866, the Fifth and Thirteenth Amendments, and Title VII of the Civil Rights Act of 1964.  *Id.* at 1, 7-11.  The court (Sullivan, J.) previously considered whether the action should be consolidated with *Ashbourne III*, but ultimately declined to consolidate.  *See* Aug. 16, 2021 Minute Order; ECF No. 8.

Defendants moved to dismiss or, in the alternative, for summary judgment, arguing that Ms. Ashbourne's claims against the Treasury Defendants are barred by res judicata and that her claims against the DHS Defendants are time-barred, otherwise precluded, or fail to state a claim. ECF No. 18 at 1-2.  Ms. Ashbourne opposed, ECF No. 29, and Defendants replied, ECF No. 34.

When a defendant moves to dismiss a pro se plaintiff's complaint or moves for summary judgment against a pro se plaintiff, the court typically issues an order advising the plaintiff of the legal rules that govern oppositions to such motions.  *See Fox v. Strickland*, 837 F.2d 507, 508 (D.C. Cir. 1988); *Neal v. Kelly*, 963 F.2d 453, 456-57 (D.C. Cir. 1992).  Because such an order had not issued before Ms. Ashbourne filed her initial opposition, the court issued a *Fox/Neal* order in January 2024 and invited supplemental briefing.  ECF No. 36.  Ms. Ashbourne then filed an amended opposition in March 2024, ECF No. 38, and Defendants filed an amended reply in May 2024, ECF No. 40.[2]  The matter is now ripe for decision.

---

[2] The court has considered all the parties' filings in rendering its decision, including Ms. Ashbourne's opposition, ECF No. 29, and amended opposition, ECF No. 38, and Defendants' reply, ECF No. 34, and amended reply, ECF No. 40.

### III.    Legal Standard

Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment pursuant to Rule 56.  ECF No. 18.  Because the court concludes that Ms. Ashbourne's complaint cannot survive a motion to dismiss, the court need not address the summary judgment standard.

### A.    Rule 12(b)(1)

Defendants move to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1).  "Article III of the Constitution prescribes that '[f]ederal courts are courts of limited subject-matter jurisdiction' and 'ha[ve] the power to decide only those cases over which Congress grants jurisdiction.'"  *Bronner ex rel. Am. Stud. Ass'n v. Duggan*, 962 F.3d 596, 602 (D.C. Cir. 2020) (alterations in original) (quoting *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317 (D.C. Cir. 2012)).  Absent subject-matter jurisdiction over a case, the court must dismiss it.  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07 (2006).

To survive a Rule 12(b)(1) motion to dismiss, the plaintiff bears the burden of demonstrating the court's subject-matter jurisdiction over the claim at issue.  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  In resolving jurisdictional questions, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).  However, "though the trial court may rule on disputed jurisdictional facts at any time, if they are inextricably intertwined with the merits of the case it should usually defer its jurisdictional decision until the merits are heard."  *Id.* at 198.

Here, Defendants argue that the court lacks subject-matter jurisdiction over certain claims because they are barred by sovereign immunity.  *See* ECF No. 18-2 at 6-8.  "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a

6

prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  "[T]he court will not hold the United States has waived its sovereign immunity unless the waiver is 'unequivocally expressed' in an Act of Congress." *Rochon v. Gonzales*, 438 F.3d 1211, 1215 (D.C. Cir. 2006) (quoting *Hubbard v. EPA*, 982 F.2d 531, 532 (D.C. Cir. 1992)).

### B.    Rule 12(b)(6)

Defendants also move to dismiss for failure to state a claim, pursuant to Rule 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the plaintiff pleads facts that are more than "'merely consistent with' a defendant's liability" and that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 557); *see Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) ("Plausibility requires 'more than a sheer possibility that a defendant has acted unlawfully.'" (quoting *Iqbal*, 556 U.S. at 678)).  "A complaint survives a motion to dismiss even '[i]f there are two alternative explanations, one advanced by [the] defendant and the other advanced by [the] plaintiff, both of which are plausible.'" *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

In deciding a motion under Rule 12(b)(6), a court must consider the whole complaint, accepting all factual allegations in the complaint as true, "even if doubtful in fact," and construing all reasonable inferences in the plaintiff's favor. *Twombly*, 550 U.S. at 555; *Valambhia v. United Republic of Tanz.*, 964 F.3d 1135, 1137 (D.C. Cir. 2020).  However, a court need not "accept inferences drawn by [a] plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)); *see Iqbal*, 556 U.S. at 679 ("While legal

conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

## IV.    Discussion

The court turns first to Ms. Ashbourne's claims against the Treasury Defendants, and then to her claims against the DHS Defendants.

### A.    Claims Against the Treasury Defendants

The Treasury Defendants argue that Ms. Ashbourne's claims against them are barred by res judicata and should be dismissed under Rule 12(b)(6).  ECF No. 18-2 at 10-13.  Put simply, res judicata "limits parties to one bite at the litigation apple." *Ashbourne II*, 894 F.3d at 302.  The doctrine bars a subsequent lawsuit "if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties . . . and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Porter v. Shah*, 606 F.3d 809, 813-14 (D.C. Cir. 2010) (quoting *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009)).  Cases involve the same cause of action if they "share the same nucleus of facts." *Ashbourne II*, 894 F.3d at 302 (quoting *Drake v. Fed. Aviation Admin.*, 291 F.3d 59, 66 (D.C. Cir. 2002)).  To assess whether two cases share that common nucleus, the court considers "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Stanton v. D.C. Ct. of Appeals*, 127 F.3d 72, 78 (D.C. Cir. 1997) (quoting Restatement (Second) of Judgments § 24(2) (1982)).

Ms. Ashbourne alleges that the Treasury Defendants took the following actions in connection with her 2011 background investigation and termination:

- "instructed OPM to enter 'issue codes' in [her] personnel records";

- "falsely accused her of lying on her resume and about her former employer Tom G. Johnson";

- "refused to respond" after OPM "asked [them] for their evidence";

- "admitted in court pleadings that they had no evidence [Ms. Ashbourne] lied";

- "said they had accused [her] of lying because they did not like her work experience and simply chose to believe her former employer Tom G. Johnson (white male) (that he fired her) rather than her (that she resigned)"; and

- "refused to remove their 'issue codes' from their investigative report."

ECF No. 1 at 6-7, 10.  These events plainly arise from the same nucleus of facts as *Ashbourne I*: the Treasury Department's 2011 determination that Ms. Ashbourne had provided misleading information about her employment history during her background investigation, and her subsequent termination.  *Ashbourne I*, 2015 WL 11303198 at *2-3.

Ms. Ashbourne does not argue otherwise.  Instead, she claims that the Department of Justice attorneys who represented the agencies in *Ashbourne I* and *Ashbourne II* "perpetrated a fraud on the court" by allegedly failing to cite or misrepresenting adverse precedent.  ECF No. 29 at 6-9; ECF No. 38 at 3-15.  Reading Ms. Ashbourne's pro se filings liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the court construes this as an argument for the fraudulent

concealment exception to res judicata.[3]   That exception kicks in when "evidence is either fraudulently concealed or when it could not have been discovered with due diligence." *Pierce v. Sec. & Exch. Comm'n*, 786 F.3d 1027, 1035 (D.C. Cir. 2015).  But even assuming that exception could apply here, Ms. Ashbourne has not plausibly alleged that any "fraudulent concealment" occurred.

First, Ms. Ashbourne argues that government counsel perpetrated fraud on the court in *Ashbourne I* because they did not "disclose to Chief Judge Beryl A. Howell that their legal arguments were directly adverse to *Doe v. U.S.* and to *McCready*" and "misrepresented the holdings" of those cases.  ECF No. 38 at 9–10; *see Doe v. United States*, 821 F.2d 694 (D.C. Cir. 1987); *McCready v. Nicholson*, 465 F.3d 1 (D.C. Cir. 2006).  The court discussed both cases in its opinion and determined that they did not apply.  *Ashbourne I*, 2015 WL 11303198 at *8–9.  On appeal, the D.C. Circuit did the same, expressly stating that the Treasury Department complied with *Doe*, and then distinguishing *McCready*.  *Ashbourne I*, 703 F. App'x 3 at 4.  Ms. Ashbourne may disagree with these decisions, but that does not mean that government counsel perpetrated fraud on the court.

Second, Ms. Ashbourne argues that government counsel perpetrated fraud on the court in *Ashbourne II*.  ECF No. 38 at 10–15.  Her argument boils down to two complaints: (1) that the government failed to disclose or misrepresented D.C. Circuit precedent to "convince[] Judge

_____

[3] Defendants construe Ms. Ashbourne's argument as a request for relief under Rule 60(d)(3), which provides that a court may "set aside a judgment for fraud on the court."  Fed. R. Civ. P. 60(d)(3); *see* ECF No. 40 at 3–6.  But "[f]ederal district courts lack the power to void other federal courts' orders through a collateral attack."  *Klayman v. Jud. Watch, Inc.*, No. 19-CV-2604, 2021 WL 602900, at *5 (D.D.C. Feb. 16, 2021), *aff'd*, 851 F. App'x 222 (D.C. Cir. 2021) (quoting *McNeil v. Harvey*, No. 17-CV-1720, 2018 WL 4623571, at *5 (D.D.C. Sept. 26, 2018)).  Thus, Ms. Ashbourne could have sought relief under Rule 60 in *Ashbourne I* or *II* itself, but this court cannot grant such relief retroactively.  *See id.*  The court therefore finds fraudulent concealment to be a closer fit.

Colleen Kollar-Kotelly and the appellate courts that *res judicata . . .* appl[ies] to § 717(c) [Title VII] civil actions," and (2) that government counsel "misrepresented" an *Ashbourne I* minute order in which the court ordered Ms. Ashbourne to file a consolidated complaint. *Id.* Neither argument can succeed.

The D.C. Circuit carefully considered whether Title VII claims like Ms. Ashbourne's are subject to res judicata, and, "join[ing] every other circuit court to have addressed the question," held that they are. *Ashbourne II*, 894 F.3d at 299-300. If Ms. Ashbourne believed that that decision was incorrect, her remedy would have been to seek rehearing en banc or file a petition for certiorari. Ms. Ashbourne pursued the latter option, and the Supreme Court denied her petition. *See Ashbourne II*, 140 S. Ct. 305. Again, the fact that Ms. Ashbourne disagrees with the merits of the government's arguments—and the fact that those arguments ultimately won the day—does not itself indicate that government counsel perpetrated fraud on the court.[4]

There is also no evidence that government counsel misrepresented the trial court's *Ashbourne I* minute order. Construing Ms. Ashbourne's filings generously, her argument seems to be that the minute order prevented her from asserting Title VII claims in her *Ashbourne I* consolidated complaint, but that government counsel suggested otherwise in *Ashbourne II*. *See* ECF No. 38 at 14-15. Therefore, per Ms. Ashbourne, she could not have brought her Title VII claims in *Ashbourne I* and the court erred by finding that her Title VII claims were barred by res judicata in *Ashbourne II*. *Id.* Again, Ms. Ashbourne has offered no evidence of misconduct by government counsel, apart from the fact that she disagrees with the government's arguments and the court's ultimate decision. In *Ashbourne II*, both this court and the D.C. Circuit accurately cited

---

[4] If Ms. Ashbourne believed that government counsel had perpetrated fraud on the court in *Ashbourne II*, she could also have filed a timely motion for Rule 60(b)(3) relief. *See* Fed. R. Civ. P. 60(b)(3). She did not do so. *See Ashbourne II*, No. 16-CV-908.

to the *Ashbourne I* docket, interpreted the orders in that case, and determined that Ms. Ashbourne could have brought her Title VII claims in the *Ashbourne I* case.  *See Ashbourne II*, 245 F. Supp. 3d at 101-02; *Ashbourne II*, 894 F.3d at 301.  Ms. Ashbourne petitioned the Supreme Court for a writ of certiorari and her request was denied.  *Ashbourne II*, 140 S. Ct. 305.  *Ashbourne II* is thus final and binding on this court.

But even if there were evidence of "fraud on the court" in *Ashbourne II* (and, to be clear, there is not), it would not change the outcome here.  Ms. Ashbourne's claims against the Treasury Defendants are independently barred by *Ashbourne I*, regardless of any alleged defects in *Ashbourne II*.

Ms. Ashbourne may disagree with the legal arguments the government made in *Ashbourne I* and *Ashbourne II*, but that alone is not evidence of fraud on the court.  This court thus joins the chorus of *Ashbourne II* and *Ashbourne III*, and concludes that Ms. Ashbourne's claims against the Treasury Defendants arising from her 2011 termination are barred by res judicata.

### B.        Claims Against the DHS Defendants

The DHS Defendants move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6).  The court analyzes questions of sovereign immunity under 12(b)(1) and all other issues under 12(b)(6).

### 1.        42 U.S.C. § 1985

Ms. Ashbourne alleges that the DHS Defendants violated 42 U.S.C. §§ 1985(2) and (3). ECF No. 38 at 19-22.   Section 1985(2) "prohibits conspiracies to interfere with judicial proceedings in federal court," while Section 1985(3) "prohibits conspiracies to deprive any person of equal protection of the laws."  *Graves v. United States*, 961 F. Supp. 314, 319-20 (D.D.C. 1997). The court concludes that Ms. Ashbourne fails to plausibly allege a conspiracy under Section 1985(2) and that her Section 1985(3) claim is barred by Title VII.

As a threshold matter, Ms. Ashbourne has sued the DHS Defendants in both their official and individual capacities. *See* ECF No. 1. But "[Section] 1985 does not waive the federal government's sovereign immunity, so federal employees acting in their official capacities are immune from liability for alleged violations of [Section] 1985." *Boling v. U.S. Parole Comm'n*, 290 F. Supp. 3d 37, 47 (D.D.C. 2017), *aff'd*, No. 17-5285, 2018 WL 6721354 (D.C. Cir. Dec. 19, 2018) (quoting *Roum v. Bush*, 461 F. Supp. 2d 40, 46 (D.D.C. 2006)). The court will therefore dismiss Ms. Ashbourne's official-capacity claims pursuant to Rule 12(b)(1); she may pursue her Section 1985 claims against the DHS Defendants only in their individual capacities.

### a.      Section 1985(2)

Section 1985(2) proscribes conspiracies to "injure [a] party or witness in his person or property on account of his having . . . attended or testified" in a federal court proceeding. 42 U.S.C. § 1985(2). "[I]nterference with at-will employment" in retaliation for participating in a federal court proceeding violates Section 1985(2). *Haddle v. Garrison*, 525 U.S. 121, 122 (1998). Reading Ms. Ashbourne's complaint, ECF No. 1, together with her opposition, ECF No. 29, and amended opposition, ECF No. 38, Ms. Ashbourne seems to argue that the DHS Defendants conspired with the Treasury Defendants, Coast Guard attorney Edith McGee, EEOC Administrative Judge ("AJ") Zachary Wright, and government counsel in *Ashbourne I* to push her out of the Coast Guard in retaliation for filing the *Ashbourne I* suit.[5] *See* ECF No. 1 at 8-10; ECF No. 29 at 13; ECF No. 38 at 19-21.

---

[5] Ms. McGee (who represented the Coast Guard in proceedings before the EEOC), AJ Wright (who presided over Ms. Ashbourne's EEOC action against the Coast Guard), and government counsel in *Ashbourne I* are not defendants in this lawsuit. *See* ECF No. 18 at 1 n.1; ECF No. 1. To the extent that Ms. Ashbourne alleges a conspiracy between only non-defendants, such allegations are not properly before the court. *See, e.g.*, ECF No. 1 at 8 ("Moore McGee and Wright conspired to . . .").

To allege a civil rights conspiracy, a plaintiff must put forward factual allegations "suggesting 'unity of purpose' or a 'meeting of the minds' among the defendants." *Rodriguez v. Ed. in Chief*, 285 F. App'x 756, 759 (D.C. Cir. 2008). Conclusory allegations of conspiracy "without factual support, such as 'events, conversations, or documents indicating that there was ever an agreement or meeting of the minds between any of the defendants[,]' . . . are insufficient." *Prince v. District of Columbia*, No. 22-CV-746, 2022 WL 17415058, at *4 (D.D.C. Dec. 5, 2022), *aff'd*, No. 22-7165, 2023 WL 6938135 (D.C. Cir. Oct. 19, 2023) (quoting *McCreary v. Heath*, No. 04-CV-623, 2005 WL 3276257, at *5 (D.D.C. 2005)). Ms. Ashbourne alleges no such facts. *See* ECF No. 1 at 8-10; ECF No. 29 at 13; ECF No. 38 at 19-21. The bulk of her allegations assert only that the DHS Defendants and their alleged co-conspirators behaved similarly, not that there was any actual agreement to behave in such a way. *Id.* For example, Ms. Ashbourne alleges that "[t]he defendants, Moore McGee, and Wright deliberately asserted their unproven charges were 'evidence' in court filings"—not that those parties agreed or conspired to do so. ECF No. 1 at 9; *see Black Lives Matter D.C. v. Trump*, 544 F. Supp. 3d 15, 40 (D.D.C. 2021), *aff'd sub nom. Buchanan v. Barr*, 71 F.4th 1003 (D.C. Cir. 2023) (holding that "parallel activities alone" are insufficient to allege a Section 1985 conspiracy). And those allegations that do mention conspiracy or agreement are conclusory legal assertions—for example, the allegation that the DHS Defendants "conspired" with others "to ignore [Ms. Ashbourne's] affidavit/testimony." ECF No. 1 at 8.

In her amended opposition, Ms. Ashbourne seems to ask the court to infer conspiracy from the notice of charges itself: "[i]n his Notice of Charges, James Trommatter charged [Ms. Ashbourne] with Employment Misconduct listing as a reason [her] statements that she was suing Donna Hansberry, Donna Prestia, and Thomas Collins in U.S. district court for violating her

civil rights." ECF No. 38 at 19. But, even assuming this allegation to be true, it does not plausibly allege a "meeting of the minds"—an agreement or even any communication between the DHS Defendants and the Treasury Defendants. Rather, Ms. Ashbourne herself states that the notice of charges was based on *her own* statements about the pending lawsuit—not on the Treasury Defendants' statements. *Id.* "[I]n spite of the requirement that the Court draw all reasonable inferences in the plaintiff's favor, some factual allegations will render certain inferences unreasonable." *Badwal v. Bd. of Trustees of Univ. of D.C.*, 139 F. Supp. 3d 295, 311 (D.D.C. 2015). Given Ms. Ashbourne's admission that she herself told the DHS Defendants about her lawsuit against the Treasury Defendants, it would be unreasonable for the court to infer—based on the notice of charges alone—a communication, much less a conspiracy, between the DHS Defendants and the Treasury Defendants.

When it comes to Section 1985(2), it is not enough to allege that the defendants did something wrong; the plaintiff "must specifically plead that [the defendants] *agreed* 'to participate in an unlawful act, or a lawful act in an unlawful manner.'" *Vindman v. Trump*, No. 22-CV-257, 2022 WL 16758575, at *5 (D.D.C. Nov. 8, 2022) (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983) (emphasis added). Ms. Ashbourne lacks this crucial ingredient of conspiracy: factual allegations that suggest a "meeting of the minds" between alleged conspirators. The court will thus dismiss Ms. Ashbourne's Section 1985(2) claim against the DHS Defendants in their individual capacities pursuant to Rule 12(b)(6).

### b.    Section 1985(3)

Section 1985(3) "prohibits conspiracies to deprive any person of equal protection of the laws." *Graves*, 961 F. Supp. at 320 (D.D.C. 1997). Ms. Ashbourne's theory of conspiracy seems to be that the DHS Defendants conspired with the Treasury Defendants, Ms. McGee, and AJ Wright to terminate her from the Coast Guard and thereby "damage her reputation, deprive her

of income, interfere with her employment opportunities, and unlawfully demand she disprove their unproven charges." ECF No. 1 at 8-10. In other words, she believes that the DHS Defendants conspired to violate her rights as a federal employee. But "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979). "Under Title VII, cases of alleged employment discrimination are subject to a detailed administrative and judicial process designed to provide an opportunity for nonjudicial and nonadversary resolution of claims." *Id.* at 372-73. "If a violation of Title VII could be asserted through [Section] 1985(3), a complainant could avoid most if not all of these detailed and specific provisions," effectively hollowing out Title VII. *Id.* at 375-76. Ms. Ashbourne's Section 1985(3) claim is therefore barred. The court will dismiss Ms. Ashbourne's Section 1985(3) claim brought against the DHS Defendants in their individual capacities pursuant to Rule 12(b)(6).

### 2. 42 U.S.C. § 1986

A defendant violates Section 1986 if they knowingly fail to prevent a conspiracy that violates Section 1985. *See* 42 U.S.C. § 1986. Therefore, "[r]ecovery under § 1986 depends on the existence of a conspiracy under § 1985." *Bowie v. Maddox*, 642 F.3d 1122, 1128 (D.C. Cir. 2011). Because Ms. Ashbourne has not plausibly alleged a Section 1985 conspiracy, the court must dismiss her Section 1986 claim.

### 3. Civil Rights Act of 1866 & Constitutional Claims

Ms. Ashbourne alleges that the DHS Defendants violated the Civil Rights Act of 1866 and the Fifth and Thirteenth Amendments by presuming that she was guilty of employment misconduct because of her race, *see* ECF No. 29 at 17, "us[ing] an unsubstantiated Notice of Charges to interfere with her at-will employment," ECF No. 38 at 18, and "using several armed male guards" to escort her out of the building, *id*. The court need not reach the merits of these claims, because

they are all barred by Title VII.  As explained above, Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment."  *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976).  This principle "precludes actions against federal officials for alleged constitutional violations as well as actions under other federal legislation."  *Kizas v. Webster*, 707 F.2d 524, 542 (D.C. Cir. 1983).  To the extent Ms. Ashbourne argues that her claims fall outside the scope of Title VII and can therefore go forward, *see* ECF No. 29 at 2, 11, that argument cannot succeed.  Ms. Ashbourne alleges that her federal employer determined that she was unsuitable for employment and removed her from the workplace because of her race.  That is precisely the sort of claim she can bring—and, indeed, has brought, *see infra* Part IV.B.4—under Title VII.

### 4.      Title VII

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1). Ms. Ashbourne alleges that the DHS Defendants violated Title VII by "manipulat[ing] the results of background investigations in order to discriminate against Black workers"; basing "their notice of charges on an unlawful presumption of guilt"; "refus[ing] to investigate [her EEO] complaint"; and "humiliat[ing], traumatiz[ing], and retaliat[ing] against her."  ECF No. 1 at 10-11.  The DHS Defendants argue that Ms. Ashbourne's Title VII claims should be dismissed because she (1) failed to state a claim against any defendant in their individual capacity; (2) did not administratively exhaust any claim related to the investigation of her EEO complaint; and (3) failed to allege a race or gender discrimination claim.  ECF No. 18-2 at 27-31.  The court addresses each of these arguments in turn.

### a.  Individual-capacity claims

Ms. Ashbourne sues Mr. Harker and Mr. Trommatter in both their official and individual capacities.  *See* ECF No. 1 at 2.  But "Title VII does not impose liability on individuals in their personal capacities."  *Coulibaly v. Kerry*, 213 F. Supp. 3d 93, 135 (D.D.C. 2016).  "[W]hile a supervisory employee may be joined as a party defendant in a Title VII action, that employee must be viewed as being sued in his capacity as the agent of the employer, who is alone liable for a violation of Title VII."  *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995).  The court must therefore dismiss Ms. Ashbourne's individual-capacity Title VII claims.

### b.  Failure to investigate EEO complaint

Ms. Ashbourne alleges that the DHS Defendants violated Title VII by "refus[ing] to investigate [her EEO] complaint."  ECF No. 1 at 11.  Specifically, she claims they "ignored [her] factual claims" and instead "investigated their own 'affidavit'"; "provided inconsistent statements"; "failed to interview the armed guards and other key witnesses"; and "failed to give statistical data to the EEO Investigator."  *Id.*  Even assuming that Ms. Ashbourne exhausted these claims, Title VII "does not create an independent cause of action for the mishandling of an employee's discrimination complaints."  *Wilson v. U.S. Dep't of Transp.*, 759 F. Supp. 2d 55, 62 (D.D.C. 2011) (quoting *Young v. Sullivan*, 733 F. Supp. 131, 132 (D.D.C. 1990), *aff'd* 946 F.2d 1568 (D.C. Cir. 1991)).  Although a Title VII plaintiff "may point to improper processing of claims as evidence of an employer's discriminatory motive," Ms. Ashbourne cannot argue that the DHS Defendants violated Title VII by mishandling her EEO complaint.  *Young*, 733 F. Supp. at 132 n.2.

### c.  Notice of charges

Ms. Ashbourne claims that the DHS Defendants violated Title VII by "manipulat[ing] the results of background investigations in order to discriminate against Black workers," and issuing

a notice of charges "based on an unlawful presumption of guilt." ECF No. 1 at 10-11. Defendants argue that Ms. Ashbourne fails to state a claim for either race or gender discrimination.

To make out a prima facie discrimination case, "the plaintiff must establish that (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Chappell-Johnson v. Powell*, 440 F.3d 484, 488 (D.C. Cir. 2006). "[A]n employment discrimination plaintiff is not required to plead every fact necessary to establish a prima facie case to survive a motion to dismiss." *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011). However, "the [c]ourt may explore the plaintiff's prima facie case at the dismissal stage to determine 'whether the plaintiff can ever meet h[er] initial burden to establish a prima face case.'" *Gilliard v. Gruenberg*, 302 F. Supp. 3d 257, 270 (D.D.C. 2018) (quoting *Tressler v. Nat'l R.R. Passenger Corp.*, 819 F. Supp. 2d 1, 5 (D.D.C. 2011)).

Although Ms. Ashbourne describes her suit as a "racial and gender complaint," ECF No. 1 at 2, she does not plausibly allege a Title VII sex discrimination claim. Ms. Ashbourne identifies herself as female and Mr. Trommatter and Mr. Harker as male, *see id.*, but "[a] mere difference in [protected characteristic] between supervisors and an employee, without more, cannot support an inference of intentional discrimination," *Morris v. Jackson*, 15 F. Supp. 3d 94, 106 (D.D.C. 2014), *aff'd in part*, *rev'd in part sub nom. Morris v. McCarthy*, 825 F.3d 658 (D.C. Cir. 2016). Because Ms. Ashbourne offers no other facts that could establish a viable sex discrimination clam, the court will dismiss any Title VII sex discrimination claim.

That leaves Ms. Ashbourne's race discrimination claim. The DHS Defendants argue that Ms. Ashbourne has failed to state a race discrimination claim because her allegations are limited

to conclusory assertions,[6] and because she "fails to allege that similarly situated white employees were not subjected to the same treatment as she was."  ECF No. 18-2 at 30-31.  Ms. Ashbourne does not respond to these arguments in either her opposition, ECF No. 29, or amended opposition, ECF No. 38.[7]  As the court advised Ms. Ashbourne in its *Fox/Neal* order, "if Plaintiff opposes the motion [to dismiss] but addresses only some of Defendants' arguments, the court may treat the arguments that Plaintiff failed to address as conceded."  ECF No. 36 at 3 (citing *Xenophon Strategies, Inc. v. Jernigan Copeland & Anderson, PLLC*, 268 F. Supp. 3d 61, 72 (D.D.C. 2017)); *see Shankar v. ACS-GSI*, 258 F. App'x 344, 345 (D.C. Cir. 2007) (concluding that plaintiff

---

[6] As the DHS Defendants explain, the complaint "consist[s] of conclusory assertions that DHS Defendants were using 'Black Codes' to manipulate background investigations against [B]lack workers, that the Summary of Charges attached to the April 2015 Letter was based on an unlawful presumption of guilt because of Plaintiff's race, and that the DHS Defendants 'humiliated, traumatized, and retaliated against her.' . . . For example, [Ms. Ashbourne] fails to allege any facts identifying the specific act that she characterizes as 'manipulat[ing] background investigations' nor does the Complaint include factual allegations providing notice of what actions she asserts the DHS Defendants performed that serve the basis for her vague and conclusory assertion that these defendants 'humiliated, traumatized, and retaliated against her.'"  ECF No. 18-2 at 30-31.

[7] In her opposition, Ms. Ashbourne makes a single conclusory statement that she "has alleged sufficient facts to state a claim under each provision," argues that "defendants refused to comply with the EEO Investigator's request for statistical data so he could investigate her [discrimination] complaint," and claims that Title VII "automatically grants [her] the right to a trial *de novo*."  ECF No. 29 at 2, 18.  None of these arguments are responsive.  In her amended opposition, Ms. Ashbourne states only that "defendants did not articulate a legitimate, nondiscriminatory reason for this Notice of Charges because their unsubstantiated charges are unconstitutional badges of slavery . . . and unlawful," and therefore she "is not required to prove pre-text."  ECF No. 38 at 23.  This seems to be a response to the DHS Defendants' alternative argument for summary judgment—but it does not address whether Ms. Ashbourne's complaint contains sufficient allegations to survive a motion to dismiss.

conceded an issue by failing to respond to argument made by defendant in a dispositive motion).[8]

The court will therefore dismiss Ms. Ashbourne's race discrimination claim.

## V.   Conclusion

For the foregoing reasons, the court will grant Defendants' motion.  A separate order will issue.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date: July 18, 2024

---

[8] Even setting her concession aside, Ms. Ashbourne has not alleged facts suggesting that the DHS Defendants took the challenged actions because of her race.  She does not, for example, identify comparators who were treated differently or allege that her supervisors made facially discriminatory comments.  *See Beaulieu v. Barr*, No. 15-CV-896, 2019 WL 5579968, at *4 (D.D.C. Oct. 29, 2019).  And, as discussed above, the fact that Ms. Ashbourne is Black and the DHS Defendants are white is not enough to support an inference of intentional discrimination.  *See Morris*, 15 F. Supp. 3d at 106.